## ATTORNEY GENERAL *vs.* OLD COLONY & NEWPORT RAILWAY COMPANY.

The South Cove Corporation, incorporated by *St.* 1833, *c.* 17, were not authorized by their charter to establish public highways across their land, without the assent of the municipal authorities, by laying out streets not required for convenient access to then existing streets from the railroad stations authorized by that statute to be placed upon their land; and did not create a public street by merely marking it on a plan, and covenanting with owners of adjacent land to lay it out, over a place which was covered with tide water until 1850.

The mayor and aldermen of Boston ordered " that L. Street be accepted and laid out as a public highway, and that the superintendent of streets be authorized to grade the same from A. to S. Streets, and A. Street from O. to R. Streets." Neither L. Street nor A. Street had been previously laid out and accepted. *Held,* that of L. Street only that part between A. Street and S. Street was laid out and accepted by this order.

GRAY, J.[*] This information has been filed by the attorney general, at the relation of the board of aldermen as surveyors of highways of the city of Boston, to restrain and prevent the obstruction of a way in Boston, alleged to be a public street, called Lehigh Street, and extending from Federal Street westwardly to South Street across lands formerly of the South Cove Corporation. It is admitted by the informant and relators that in this commonwealth a public way cannot be created by dedication without the assent of the public authorities. *Morse* v. *Stocker*, 1 Allen, 153, 154. But it is contended that such assent may be either by previous grant, or by subsequent acceptance; and that the place in question has been made a public street, 1st. By the acts of the South Cove Corporation in the exercise of the powers conferred upon them by their charter from the legislature in January 1833; 2d. By the action of the mayor and aldermen of the city in October 1852.

---

[*] BIGELOW, C. J. did not sit in this case.

1. The statute establishing the South Cove Corporation gave to them the power to purchase, hold and possess all or any part of the land, wharves and flats, lying easterly of Front Street, (now Harrison Avenue,) southerly of Essex Street, and westerly of Sea (now Federal) Street. *St.* 1833, *c.* 17, § 2. The provisions for laying out and making streets are contained in the sixth and thirteenth sections of that statute, which are as follows :

By the sixth section, the president and directors of the corporation are authorized to take such measures as they may deem expedient to procure the location, upon these flats and lands, of the Boston & Worcester and Boston & Providence Railroads, and "for that purpose" to give, sell or convey to the corporations owning those railroads, or to either of them, such quantity of land lying between Sea and Front Streets as shall be necessary for the depots or terminations of either or both of the railroads ; and may inclose and fill up the flats and make solid ground, "for the purposes aforesaid, and may lay out and extend streets in any direction, from or near said depots or *termini,* to communicate with the existing streets in the vicinity, and may fill up and fully complete the same for public travel, and may fill up and make lots of building ground contiguous thereto, for the use and benefit of said corporation." And if such streets cross any lands owned by others, which cannot be acquired by voluntary agreement, the owners thereof may recover damages in the manner provided by law upon the laying out of highways. "And in consideration of the advantages to be derived from the location and final termination of said railroads or either of them upon the lands aforesaid, said corporation may give, in the nature of a bonus, to said railroad corporations, or either of them, such sums of money and parcels of land, together with such other facilities and advantages, as may be found useful and profitable to said corporations." And the benefit of such gifts, grants and accommodations so made to the railroad corporations, and of all engagements and agreements made by them in consideration thereof, is secured to them, and to the South Cove Corporation, respectively.

The thirteenth section provides that before any street or streets laid out and made by the South Cove Corporation upon the land and flats aforesaid shall be extended across the lands of others " to communicate with any of the existing streets in that vicinity," the corporation shall deposit a plan of the location thereof with the mayor and aldermen, who, after notice to all persons interested, " shall hear the parties, and determine upon the expediency of extending such street or streets in manner aforesaid. And if, upon such hearing, the mayor and aldermen shall be of opinion that the public necessity and convenience require the extension of such street or streets, they shall have power to authorize the extension thereof. And all streets so authorized shall be taken and deemed to be public highways." By the fourteenth section this charter is to continue in force forty years.

No power is here given to the corporation to lay out or extend streets over lands not their own without the assent of the municipal authorities; and their authority to lay out streets even on their own lands is limited to streets " from or near said depots or *termini* to communicate with the existing streets in the vicinity." The words of this clause, as well as the context, show that the power granted was merely incidental to the establishment of the railroad stations on their land; that the legislature did not intend to delegate to this private corporation the general power of laying out public highways throughout this tract during the whole lifetime of their charter, or by plans or schemes on paper to fix the lines of streets to be made in the future; but only to confer upon them such special powers as might enable them to procure the location upon their land of one or both of these railroad stations, and for this purpose to lay out and immediately fill up and complete such streets as might be necessary to provide convenient access from such railroad stations to then existing streets. The powers granted to the South Cove Corporation are in much more limited terms than those conferred upon the Associates of the Jersey Company, and passed upon by the courts of New Jersey in the case of *Morris Canal & Banking Co.* v. *Mayor, &c. of Jersey City*, 1 Beasley, 247, 252, cited for the relators.

The Boston & Worcester Railroad station was in fact located upon these lands in the spring of 1835. The Boston & Providence Railroad station never was placed there.

On the 2d of February 1835 the South Cove Corporation entered into an indenture with the city, by which the corporation, in consideration of a release from the city of its title in certain flats forming continuations of streets and passage ways running into the South Cove, agreed forthwith to construct and open for the public use and accommodation upon their own lands and flats not less than ten streets and highways, which should not be chargeable to the city until duly accepted for public streets by the surveyors of highways. These ten streets were accordingly built and accepted shortly afterwards.

The earliest doings of the South Cove Corporation, on which the relators rely as evidence of the laying out as a public street of the part of Lehigh Street now in question, are no more than evidence of an intention or agreement to extend a street over this place, not of any actual laying out, within the power conferred by the charter. Such are the deed of March 30th 1846 from that corporation to the Old Colony Railroad Corporation of a tract of land east of South Street, describing it as bounded on one side " by the northwesterly line of Lehigh Street as agreed to be extended," and referring to a plan recorded with it as showing the location and width of this and other streets, upon which such a street is delineated as extending to Sea Street ; and the indenture of April 20th 1847 between the South Cove Corporation and the South Wharf Corporation (which owned part of the land over which Lehigh Street as extended would pass) containing mutual covenants to lay out this street for the use of both corporations and of the public.

At the time of the execution of these deeds, a portion of the proposed street was covered with tide-water ; and upon the most favorable view of the evidence introduced by the relators the street was not filled up, or graded, or opened for travel, until .850 or 1851, or at least seventeen years after the grant of the charter of the South Cove Corporation, fifteen years after the location of the Boston & Worcester Railroad station upon

these lands, long after many other streets had been laid out and opened for travel across the lands of the South Cove Corpora-tion, and after the *St.* of 1846, *c.* 203, had provided that no way previously opened and dedicated and not already become a public way should become chargeable upon any city or town, unless laid out by such city or town, in the manner prescribed by the statutes of the Commonwealth.

That part of Lehigh Street between Federal Street and South Street did not therefore become a public street by the mere force and effect of the acts of the South Cove Corporation under their charter.

2. The petition presented to the mayor and aldermen in Oc-tober 1852 requested them " to accept and grade Lehigh Street, and Albany Street from Lehigh to Rochester Streets." The report of the committee on this petition, which was accepted and passed by the board, was " that Lehigh Street be accepted and laid out as a public highway and that the superintendent of streets be authorized to grade the same from Albany to South Streets, and Albany Street from Orange to Rochester Streets." The doubts suggested in the interpretation of this order are occasioned by the brief and elliptical terms in which it is ex-pressed. The relators insist that the whole of Lehigh Street, from Albany Street to Sea Street, was thereby laid out and accepted, although the superintendent of streets was then au-thorized to grade only the westerly part of it, from Albany Street to South Street. The respondents contend that the qualification " from Albany to South Streets " limits the accept-ance and laying out, as well as the grading, of Lehigh Street. A reference to the additional clause of the order — " and Albany Street from Orange to Rochester Streets " — and to the condi-tion of the streets mentioned in the order at the time of its passage, solves the difficulty.

Lehigh Street entered Albany Street between Orange Street and Rochester Street, and no part of Albany Street between those two streets had been previously accepted or laid out as a public highway. It is clear, therefore, that the clause as to acceptance and laying out being the first clause in the order, as

well as the second clause, about grading, applies to the street named in the last clause — " Albany Street from Orange to Rochester Streets " — for otherwise the order would provide for grading a part of Albany Street which had never been accepted or laid out; and there is no principle of construction by which the intermediate clause, limiting Lehigh Street " from Albany to South Streets," can be disconnected from the first clause as to acceptance and laying out, which, as we have seen, must necessarily reach forward, beyond the intermediate clause, to the last clause of the order. Taking the whole order together, the subject of it, or, grammatically speaking, the nominative of the sentence, is " Lehigh Street from Albany to South Streets, and Albany Street from Orange to Rochester Streets; " and the order has the same meaning and effect as if it had been in this form : " That Lehigh Street from Albany Street to South Street, and Albany Street from Orange Street to Rochester Street, be each accepted and laid out as a public highway, and that the superintendent of streets be authorized to grade the same." That part of Lehigh Street, therefore, east of South Street, and now in question, was not touched by the order.

It is satisfactory to find, in the entries made by the city clerk immediately afterwards upon the city's index of accepted streets, and in the subsequent action of the city authorities and of the abutters upon the alleged way, evidence that the construction which is in our opinion required by the terms of this order accords with the understanding which prevailed soon after its passage.

Being of opinion, for the reasons above stated, that the way in question never became a public street, and that this information cannot be sustained, it is unnecessary to consider the other grounds of objection taken by the respondents.

*Judgment for the respondents.*

*J. P. Healy & G. O. Shattuck,* for the relators.

*S. Bartlett & J. G. Abbott,* (*C. F. Choate* with them,) for the respondents.